**Opinion issued July 7, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00637-CV**

———————————

## IN RE THE COMMITTMENT OF GERALD LEE RICKS

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 23-CV-1439**

---

## O P I N I O N

This appeal arises out of a suit to civilly commit Gerald Ricks as a sexually violent predator under the Civil Commitment of Sexually Violent Predators Act. *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.209. A jury found that Ricks is a sexually violent predator, and the trial court signed a final judgment in accord with the verdict and ordered that Ricks be committed when released from prison.

Ricks appeals, arguing that the evidence is insufficient to prove beyond a reasonable doubt an essential element required to commit him—specifically, that he suffers from a behavioral abnormality that makes it likely he will engage in a predatory act of sexual violence. Ricks also argues that the trial court erred in prohibiting him from questioning a testifying expert about the State's de-designation or withdrawal of another expert witness who was going to testify.

Based on the record before us, we hold the evidence is sufficient to prove that Ricks suffers from the required behavioral abnormality. We further hold that Ricks did not preserve for review his admissibility complaint, and that even if he had done so, the trial court did not reversibly err as to this issue.

We affirm.

## BACKGROUND

### Ricks's Sex Offense Convictions

In 1995, a grand jury indicted Ricks for two counts of aggravated sexual assault of a child, alleging that he penetrated the child's vagina with his finger and put his mouth on the child's vagina. Two years later, Ricks pled guilty to both offenses, and the trial court deferred adjudicating him guilty and placed him on community supervision for ten years. The terms of his supervision included not committing further offenses, attending a sex offender treatment program, and having no contact with any minor without another adult present acting as a chaperone.

In 2000, a grand jury indicted Ricks for one count of indecency with a child by contact, alleging that he touched the breast of another child with his hand and a finger with the intent to arouse and gratify his sexual desire. A year later, Ricks pled guilty to the offense, and the trial court sentenced him to 20 years' imprisonment.

The State moved to revoke Ricks's deferred adjudication community supervision. On the same date that the trial court rendered judgment on the offense of indecency with a child by contact, the court revoked Ricks's deferred adjudication community supervision, found him guilty of both counts of aggravated sexual assault of a child, and sentenced him to 25 years of imprisonment for each offense.

## The Present Suit for Civil Commitment

As a result of his three convictions, Ricks has been in prison ever since. But he would have been eligible for parole in 2024 and would have fully discharged his sentences in 2026 (given that all three sentences were to be served concurrently). Alleging that Ricks is a sexually violent predator, the State filed the present suit, in which it seeks to commit him. *See* TEX. HEALTH & SAFETY CODE § 841.041.

## Trial

Ricks denied that he is a sexually violent predator, and the issue was tried to a jury. At trial, Ricks did not dispute that his sex offense convictions made him a repeat sexually violent offender. *See id.* § 841.003(a)(1), (b). The sole disputed issue was whether Ricks suffers from a behavioral abnormality that makes him likely to

engage in a predatory act of sexual violence. *See id.* §§ 841.002(2), (5), 841.003(a)(2).

Three witnesses testified at trial: Ricks; Jim Roberts, an investigator with the Special Prosecution Unit Civil Division, who testified about Ricks's prior convictions; and Michael Arambula, M.D., a forensic psychiatrist who testified on behalf of the State. Only Ricks's and Arambula's testimony is relevant on appeal.

**Ricks's Testimony**

Ricks was called as a witness by the State. In his testimony, he acknowledged his past sex offense convictions—specifically, two counts of aggravated sexual assault of a child and one count of indecency with another child by contact.

Ricks committed the aggravated sexual assaults against his wife's niece, who was five years old when he first sexually abused her. She was eight years old when he last sexually abused her. Ricks conceded that he had found the girl to be sexually attractive during this time, in spite of her age, and he sexually fantasized about her.

Ricks pled guilty to two counts of aggravated sexual assault for his abuse of this child and was placed on deferred adjudication community supervision. While under supervision, he participated in an outpatient sex offender treatment program.

According to Ricks, he "relapsed" while under treatment, meaning that he committed another sex offense, the one for indecency with a child. Specifically, he went over to his brother's home when no adults were there, which violated a term of

4

his supervision, and touched his sixteen-year-old niece's breasts. He also tried to touch her vagina. The child resisted his conduct, but Ricks stopped only when the child's mother returned home and discovered him in her daughter's room.

This episode led to Ricks's conviction for all three offenses (the two counts of aggravated sexual assault of a child and indecency with a child by contact). He was sent to prison for all of these offenses, with the sentences to run concurrently.

Ricks was questioned about whether he had also sexually abused a third young girl—another of his brother's daughters—without having been charged for it. Ricks initially denied doing so. But he then invoked the Fifth Amendment.[1]

Ricks testified that he completed a nine-month sex offender treatment program while in prison. He was required to complete this program as a condition of his release from prison. He represented that the skills he learned from this program will prevent him from reoffending on release.

Ricks, who was 60 years old at the time of trial, agreed that he still has a high sex drive. Even so, Ricks testified that this posed no ongoing risk, as he had replaced his sexual interest in female children with other desires and no longer had a sexual interest in female children. However, Ricks later admitted that this was not true and that he, in fact, still remains sexually attracted to female children.

---

[1]    Sex offenses against children have no statute of limitations. *See* TEX. CODE CRIM. PROC. art. 12.01(1)(B), (1)(D), (1)(E).

**Dr. Arambula's Testimony**

Dr. Arambula was the only expert to testify in this case. He opined that Ricks suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. He based his opinion on several factors, with the two most significant ones being Ricks's degree of sexual deviance and his antisocial personality traits. Arambula testified that research shows sexual deviance and antisocial personality traits are two important factors when assessing a sex offender's risk of reoffending. Overall, Arambula opined, Ricks "remains a high risk" to reoffend on release.[2]

Arambula disagreed with Ricks that Ricks's completion of the sex offender treatment program in prison lessened the likelihood that Ricks would reoffend. Arambula expressed skepticism that Ricks had genuinely internalized treatment goals for multiple reasons, including Ricks's:

- denial or minimization of his behavior, such as by disputing the details and duration of the sex offenses to which he had pled guilty; and

- trial testimony, in which Ricks described his treatment and its impact on him in general terms that did not reflect the details of his offenses.

Without internalization, Arambula opined, Ricks's recidivism risk remained high.

---

[2] In addition to discussing Ricks's convictions, Arambula noted an allegation of sexual abuse for which Ricks was never charged. A girl alleged that Ricks abused her—by fondling her, penetrating her with his finger, and attempting to have sex with her several times—when she was between the ages of seven and twelve. As mentioned, he was never charged concerning this allegation.

Arambula further testified that Ricks's attraction to young girls persisted for years and that recent records showed Ricks remained attracted to young girls. According to Arambula, Ricks's age did not ameliorate the risk assessment because Ricks still has a high sex drive, and when, as here, an offender preys on children, recidivism risk does not decrease with age.

**Jury Verdict and Trial Court's Judgment**

The jury found that Ricks is a sexually violent predator. In accordance with the verdict, the trial court signed a final judgment decreeing that Ricks is a sexually violent predator and ordered him to be civilly committed on release from prison.

**DISCUSSION**

**Civil Commitment of Sexually Violent Predators Act**

The Civil Commitment of Sexually Violent Predators Act provides for the involuntary commitment of a class of offenders who are "sexually violent predators." TEX. HEALTH & SAFETY CODE § 841.001. A person qualifies as a "sexually violent predator" if he meets two elements:

(1) he "is a repeat sexually violent offender" who

(2) "suffers from a behavioral abnormality" that makes him "likely to engage in a predatory act of sexual violence."

*Id.* § 841.003(a). To obtain an adjudication of "sexually violent predator" status and an order of commitment, the State must prove these two elements beyond a

reasonable doubt. *Id.* §§ 841.062(a), 841.081(a); *In re Commitment of Stoddard*, 619 S.W.3d 665, 678 (Tex. 2020).

Only element two (behavioral abnormality) is at issue in this appeal.

**Behavioral Abnormality**

A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE § 841.002(2); *see also Stoddard*, 619 S.W.3d at 678 ("behavioral abnormality" is condition that creates likelihood affected person will engage in future sexually violent behavior). A "predatory act" is "an act directed towards individuals, including family members, for the primary purpose of victimization." TEX. HEALTH & SAFETY CODE § 841.002(5).

The statute "does not specify how the State must prove this element." *In re Commitment of Dunsmore*, 562 S.W.3d 732, 744 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see also In re Commitment of Bohannan*, 388 S.W.3d 296, 305 (Tex. 2012) (statute provides "little guidance" as to how to prove behavioral abnormality).

**Ricks's Arguments on Appeal**

Ricks raises three issues on appeal. In his first two issues, he challenges the legal sufficiency and factual sufficiency of the evidence, respectively, to support the

8

jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In his third issue, Ricks argues that the trial court erred in refusing to allow his counsel to question Dr. Arambula about another witness whom the State de-designated or withdrew as an expert right before trial. We address each in turn.

## I. Legal Sufficiency: Dr. Arambula's opinions and testimony are legally sufficient to support the jury's finding that Ricks has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Ricks asserts that Dr. Arambula's opinions and testimony are legally insufficient to support the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We disagree.

### A. Legal-sufficiency standard in sexually violent predator appeals

The Texas Supreme Court has most recently summarized the legal-sufficiency standard in this context in *Commitment of Stoddard*. There, it stated that the "standard in criminal cases," in which proof beyond a reasonable doubt is customary, "is consistent with the civil standard" in sexually violent predator appeals. 619 S.W.3d at 675. So, viewing the evidence in the light most favorable to the verdict, we ask whether any rational jury could have found beyond a reasonable doubt that Ricks suffers from a behavior abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.*; *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

9

Under this standard, it is the role of the jury to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *See Stoddard*, 619 S.W.3d at 674 (irrespective of burden of proof, jury is sole arbiter of credibility and weight); *In re Commitment of Summers*, No. 01-19-00738-CV, 2021 WL 3776751, at *11 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (same plus inferences).

## B.     Arambula's opinions and testimony are legally sufficient.

The record shows that Arambula is a medical doctor who specializes in psychiatry. He has more than three decades of experience in forensic psychiatry and has been making behavioral-abnormality evaluations for two decades. He attested that he uses the methodology he learned during his training. In this case, Arambula based his opinions and testimony on review of records, observation of Ricks's testimony, and research findings concerning the recidivism of sex offenders.

Here, Arambula reviewed records pertaining to Ricks, including investigative and legal records, prison records, and notes made by his treatment providers. Ricks refused to participate in a clinical interview with Arambula. But Arambula reviewed Ricks's pretrial deposition and observed Ricks's testimony at trial.

Arambula opined that "Ricks does have a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." He based this opinion

10

primarily on two factors: Ricks's sexual deviance and antisocial personality traits, which he says research shows to be the two biggest risk factors for recidivism.

As to sexual deviance, Arambula noted that Ricks's sexual offense history includes at least two victims and three convictions. Ricks abused the first of these two victims on 10 to 15 occasions over a period of one-and-a-half years, which, according to Arambula, signals that Ricks's behavior is chronic. According to Arambula, research shows there is a higher risk of recidivism—double the average risk for sex offenders—when the offender has two or more victims and the offender repeats this behavior over an extended period. Arambula noted that records created as recently as a year before trial show Ricks remained attracted to young girls.

In connection with this opinion on sexual deviance, Arambula diagnosed Ricks as suffering from pedophilia or pedophilic disorder. Arambula explained that this is a chronic condition that "really doesn't go away" with the passage of time.

Regarding antisocial personal traits, Arambula testified that people with these traits are prone to taking advantage of others. As evidence of Ricks's antisocial traits, Arambula pointed to what he described as Ricks's disregard for his victims' wellbeing and Ricks's continued misbehavior in prison, which included disciplinary infractions and forging a judge's name. Arambula opined that Ricks's chronic sexual deviance is "aggravated by his antisocial personality;" Arambula testified that

11

research shows that an antisocial personality is a major factor—second only to sexual deviance—when assessing an offender's risk of recidivism.

In addition, Arambula noted other factors he considered. For example, Arambula testified that the circumstances surrounding Ricks's abuse of his second victim were significant in that Ricks did so while he was on probation for the sex offenses he committed against his first victim. Research, Arambula said, shows that an offender who reoffends while he is under supervision has an increased risk of recidivism. Similarly, Ricks was being treated for his sexual deviance when he abused his second victim, an indicator that his "illness is more severe," given that he was "not able to control it with treatment." Ricks had been in treatment for approximately three years when he reoffended against his second victim.

With respect to treatment, including Ricks's completion of a nine-month sex offender treatment program that he was required to complete to be released from prison, Arambula testified there are indications that Ricks had not genuinely internalized treatment goals. For example, he asserted, Ricks minimized his behavior in certain ways, such as through his approach to discussing his first victim and his actions. Arambula testified that he found this significant because research and his own training have shown him that when people are sexually deviant, this kind of minimization or denial is "a symptom of the illness," and the elimination of such minimization and denial is necessary for effective treatment and rehabilitation.

Arambula also expressed concern about a couple of notes in Ricks's treatment records. As Ricks neared the completion of treatment, he complained that having to register "as a sex offender was some kind of political tool." In another note made at the end of treatment, Ricks's therapist wrote that Ricks should undergo a psychosocial evaluation and "legitimately" engage in treatment. Arambula asserted that those who treat sex offenders assess whether their patients are "engaging for real" or "just going through the motions." He inferred from the qualifier "legitimately" that the therapist had some reservation about Ricks.

Arambula grounded his testimony in the facts of the case; he also grounded his testimony in research findings that went unchallenged. Based on these case facts and research findings, Arambula concluded that Ricks suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Bohannan*, 388 S.W.3d at 302–03 (increased risk is dispositive issue with respect to whether offender has behavioral abnormality).

The question before us is, considering this evidence, whether any rational jury could have found beyond a reasonable doubt that Ricks suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Stoddard*, 619 S.W.3d at 675; *Stuteville*, 463 S.W.3d at 551. Viewing this evidence in the light most favorable to the jury's verdict that Ricks's does indeed suffer from such a behavioral abnormality, we hold that the evidence is legally sufficient. *See,*

13

*e.g.*, *In re Commitment of Farro*, No. 01-18-00164-CV, 2018 WL 6696567, at *14–15 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. denied) (opinions as to behavioral abnormality made by two experts, one of whom was Arambula, held legally sufficient where their opinions rested "in large part" on their assessment of offender's "antisocial personality and his sexual deviance"); *In re Commitment of Williams*, 539 S.W.3d 429, 439–40 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (expert opinion based on factors that research showed to be predicative of recidivism for sex offenders, like sexual deviance and circumstances of appellant's history, was legally sufficient evidence to show behavioral abnormality).

In so holding, we note that the disputes in this case turn on conflicts in the evidence and credibility assessments—for example, Ricks's testimony that treatment gave him the tools to avoid reoffending and Arambula's contrary evaluation. But when the resolution of fact disputes turns on witness credibility, we defer to the jury's credibility determinations. *See Stoddard*, 619 S.W.3d at 674, 676 (evidentiary conflicts are construed in favor of verdict in legal-sufficiency review and appellate court defers to jury on witness credibility).

## C. Ricks's counterarguments do not alter our conclusion.

Ricks argues Dr. Arambula's opinions and testimony are nonetheless legally insufficient. Ricks asserts two no-evidence points. He argues (on appeal) that Arambula's behavioral-abnormality opinion constitutes no evidence because it is

scientifically unreliable. Ricks further argues that Arambula's behavioral-abnormality opinion constitutes no evidence because, he argues, it is conclusory.

In addition, Ricks argues that Arambula's behavioral-abnormality opinion is legally insufficient because, Ricks asserts, Arambula presumed the existence of a behavioral abnormality and then required Ricks to rebut this presumption. Ricks also asserts that Arambula incorporated a non-statutory consideration, treatment, and thus that his opinion amounts to no evidence.

Each of these four arguments amounts to a legal-sufficiency challenge. *See Pay & Save, Inc. v. Canales*, 691 S.W.3d 499, 502 (Tex. 2024) (evidence is legally insufficient when there is no evidence in the record to prove a vital fact or rules of law or evidence prevent us from giving evidence any weight). For the reasons we explain below, we reject each of these arguments.

### 1. Ricks did not preserve scientific-reliability complaints.

Ricks argues that Arambula's expert opinion and testimony are scientifically unreliable, and thus no evidence, because, he argues, Arambula relied solely on a clinical evaluation without "reliance on actuarial testing"—*i.e.*, a type of assessment that employs numbers and statistics to try to quantify an offender's likelihood of

reoffending in the future[3]—"or other testing measures." According to Ricks, clinical evaluations are subjective and are "no more reliable than flipping a coin."

Under Texas law, however, we do not reach this complaint because Ricks did not challenge below the scientific reliability of Arambula's opinions and testimony.

Texas courts have consistently held that challenges to the reliability of expert opinions and testimony must be made in the trial court to preserve them for appellate review. *See, e.g.*, *In re Commitment of Cordova*, 618 S.W.3d 904, 916 (Tex. App.—El Paso 2021, no pet.) (citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009)); *see also In re Commitment of Grunsfeld*, No. 09-09-00279-CV, 2011 WL 662923, at *6 (Tex. App.—Beaumont Feb. 24, 2011, pet. denied) ("If an expert opinion has a supporting basis, but there is a reliability challenge that requires the trial court to evaluate the underlying methodology, the defendant must make a timely objection so that the trial court has the opportunity to conduct this analysis."). Absent such a challenge, Texas law says that even allegedly unreliable opinions and testimony remain probative evidence. *In re Commitment of Encalade*, 704 S.W.3d 555, 574 (Tex. App.—Houston [1st Dist.] 2023, pet. granted, judgm't vacated w.r.m.) (citing *Pollock*, 284 S.W.3d at 818; vacated as moot due to death); *In re Commitment of Letkiewicz*, No. 01-13-00919-CV, 2014 WL 2809819, at *6 (Tex.

---

[3] *See In re Commitment of Day*, 342 S.W.3d 193, 202 (Tex. App.—Beaumont 2011, pet. denied) (describing use of actuarial testing in sexually violent predator context).

App.—Houston [1st Dist.] June 19, 2014, pet. dism'd w.o.j.) (citing *Pollock*, 284 S.W.3d at 818, and other authorities).

Ricks did not challenge Arambula's opinions or testimony as being unreliable in the trial court. Thus, Ricks did not preserve complaints about Arambula's reliability for review.[4] *See, e.g.*, *Farro*, 2018 WL 6696567, at *15 (even if records relied on by experts were unreliable, their opinions remained probative evidence due to lack of objection in trial court regarding reliability); *Barrientes v. State*, No. 14-22-00023-CV, 2023 WL 1169022, at *3 (Tex. App.—Houston [14th Dist.] Jan. 31, 2023, no pet.) (failure to object to expert's testimony as unreliable at trial waived any challenge to reliability of underlying methodology, technique, or foundational data used by expert); *Cordova*, 618 S.W.3d at 917 (appellant did not object to reliability of expert opinions in trial court and therefore could not challenge their reliability on appeal); *In re Commitment of H.L.T.*, 549 S.W.3d 656, 662 (Tex. App.—Waco 2017, pet. denied) (same).

---

[4] Texas courts have explained that one reason expert reliability challenges must be made in the trial court is to give the party offering the evidence an opportunity to defend its reliability or remedy its deficiencies. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *2 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998)). Another reason is that appellate courts may be ill-equipped to evaluate a given challenge to the reliability of an expert's methodology when the issue has not been developed in the trial court. *See In re Commitment of Gonzalez*, No. 02-21-00238-CV, 2022 WL 1183219, at *17 (Tex. App.—Fort Worth Apr. 21, 2022, pet. denied) (when reliability challenge requires court to evaluate foundational data used by expert, objection must be timely made so trial court has opportunity to consider data at issue).

**2. On this record, we disagree that Dr. Arambula's testimony and opinions offer merely unsupported conclusions.**

Ricks also argues that Dr. Arambula's opinions and testimony rest on his mere say-so. That is, Ricks asserts that Arambula's opinions and testimony are bare assertions and thus no evidence. *See In re Commitment of Dodson*, 434 S.W.3d 742, 749–50 (Tex. App.—Beaumont 2014, pet. denied) (holding challenge to Arambula's reliability was not preserved for review but addressing complaint that his testimony was conclusory).

Specifically, Ricks says that Arambula did no more than assert that his conclusions rested on principles relied on in the field of psychiatry. Consequently, Ricks argues, Arambula's opinion rests on no more than credentials and say-so.

On this record, and under Texas law, we reject the contention that Arambula's opinions and testimony are conclusory and thus no evidence. Without restating our summary of Arambula's opinions and testimony and his bases for them in full, we reiterate that the record shows that Arambula testified about and relied on evidence concerning Ricks's offenses, treatment, and incarceration; Ricks's pretrial deposition and his trial testimony; and research findings as to the risks factors for recidivism among sex offenders, like Ricks. Arambula's opinions and testimony do not consist of bare assertions that constitute no evidence. *See Dodson*, 434 S.W.3d at 750 (holding that Arambula presented reasoned, non-conclusory opinion as to behavioral abnormality based on evidence similar to the evidence in the record

before us in this appeal); *see also H.L.T.*, 549 S.W.3d at 661–64 (rejecting complaint that expert testimony was conclusory where expert relied on evidence about offender and his offense history, identified offender's risk factors for reoffending, and evaluated offender's progress in sex offender treatment).

Arambula did testify that he relied on his expertise as a forensic psychiatrist and that psychiatrists rely on the kinds of documentary evidence that he relied on in this case. But this alone does not make his opinion conclusory in the sense of solely resting on his credentials here; he explained how he arrived at his behavioral-abnormality opinion and the information (explained above) on which he relied. *See In re Commitment of Howard*, No. 01-22-00580-CV, 2023 WL 5280200, at *13 (Tex. App.—Houston [1st Dist.] Aug. 17, 2023, pet. denied) (testimony is not conclusory when expert explains methodology he used to formulate his opinion and that methodology is commonly accepted and used by experts in his field, identifies evidence relied on, and explains how this evidence supports opinion); *see also H.L.T.*, 549 S.W.3d at 662 (expert testified that she relied on standard methodology used by forensic psychiatrists, including document review and interview).

### 3. Dr. Arambula did not presume Ricks has a behavioral abnormality or require him to rebut a presumption.

Ricks next argues that Dr. Arambula presumed the existence of a behavioral abnormality based on Ricks's offense history and, relatedly, that he required Ricks to rebut this presumption. The record shows otherwise.

19

### a. Dr. Arambula's behavioral-abnormality opinion does not rest on a presumption.

Arambula described in detail how he arrived at his opinion about Ricks's behavioral abnormality, and, on this record, contrary to Ricks's assertion, he did not exclusively rely on Ricks's offense history to conclude that Ricks's had such an abnormality, let alone presume a behavioral abnormality on this or any other basis.

In addition to Ricks's offense history,[5] Arambula stated that he relied on facts derived from Ricks's pretrial deposition, trial testimony, and treatment notes; these facts include such information as Ricks's present-day minimization of his past behavior and his failure to internalize treatment goals. Arambula also asserted that he relied on records created as recently as a year before trial showing Ricks remained attracted to young girls, as well as records concerning his behavior while in prison. Nothing in the record suggests that Arambula applied a presumption of any kind in forming his opinion that Ricks presently has a behavioral abnormality.

### b. We also disagree with Ricks's assertion that Dr. Arambula reasoned that, by failing to participate in a clinical interview, Ricks failed to rebut a presumption of behavioral abnormality.

Dr. Arambula testified that Ricks hurt his case by refusing to be interviewed because an interview gives an offender a chance to provide additional information

---

[5] Ricks's offense history is relevant to the issue of behavioral abnormality. *Stuteville*, 463 S.W.3d at 554–56. We do not understand him to be arguing otherwise on appeal.

20

that may mitigate unfavorable offense history. But in explaining that Ricks passed up a potential opportunity to show that one of several considerations—his past offense history—did not accurately reflect his present-day risk of reoffending, Arambula neither (contrary to Ricks's assertion) expressed the view that past offense history is conclusive if not rebutted nor that Ricks failed to rebut a presumption by refusing to participate in a clinical interview.

On the contrary, Arambula did no more here than what the statute allows. Under the Civil Commitment of Sexually Violent Predators Act, the State was entitled to have Ricks interviewed by Arambula. *See* TEX. HEALTH & SAFETY CODE § 841.061(c), (f) (State entitled to clinical interview of person to be tried as sexually violent predator by an expert, and person to be so tried is required to submit to this clinical interview). And the statute provides that Ricks's refusal to participate in the interview could be used as evidence against him at trial. *See id.* § 841.061(f)(1) (person's "failure to participate may be used as evidence against the person at trial").

Arambula's consideration of Ricks's refusal to participate as a missed opportunity—as one piece of evidence among many—is consistent with these provisions. Arambula did not express an opinion that Ricks had the opportunity to rebut a presumption of behavioral abnormality but failed to do so by passing it up.

**4.      Dr. Arambula did not improperly consider Ricks's treatment.**

Ricks next argues that the kind of treatment Ricks needs as a sex offender has no relevance as to whether he suffers from a behavioral abnormality. Ricks argues that Dr. Arambula relied on this non-statutory consideration and thereby impermissibly expanded the concept of behavioral abnormality—and thus that his opinion is legally insufficient evidence. On this record, we disagree.

At trial, Ricks repeatedly emphasized that treatment was an important issue before the jury. In his opening statement, Ricks's counsel told the jury, "This case is going to turn on treatment." In closing arguments, Ricks's counsel repeatedly returned to the subject of treatment, urging that Ricks "is a treated sex offender." Based on Ricks's trial testimony, his counsel argued, "In fact, he showed you his treatment. He showed you that he had the knowledge base and the tools to never re-offend, to live the rest of his life with no more accusations; no more convictions; most importantly, no more victims." Ricks's counsel advocated, "I promised you one thing. It came down to treatment. Mr. Ricks has been treated."

Arambula disagreed that Ricks was successfully treated, questioning whether he had genuinely participated in treatment, as opposed to going through the motions; he concluded, based on the evidence, that Ricks had not internalized treatment goals. Arambula opined that Ricks's treatment to date did not alter his opinion that Ricks presently suffers from a behavioral abnormality.

Arambula explained to the jury that a bad offense history does not doom an offender to sexually violent predator status. Rather, Arambula testified, an offender "can do something with that in treatment." Arambula opined that offenders like Ricks are less likely to have more victims "when they've had successful treatment." Without successful treatment, "the recidivism risk remains elevated" for offenders like Ricks.

In other words, to the extent Arambula considered treatment, he did so as part of his evaluation of how likely Ricks is to reoffend. Arambula did not add to the requirements of the statute. *See Stoddard*, 619 S.W.3d at 678 ("behavioral abnormality" is present condition that creates likelihood affected person will reengage in sexually violent behavior); *Bohannan*, 388 S.W.3d at 302–03 (increased risk is controlling issue as to whether offender has behavioral abnormality making it likely he will engage in predatory act of sexual violence).

## II.    Factual sufficiency: The evidence is factually sufficient to support the jury's finding that Ricks has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Ricks also argues the evidence is factually insufficient to show beyond a reasonable doubt that he has a behavioral abnormality, relying on several matters of disputed fact that he asserts a rational jury could have decided only in his favor.

We address and reject each of Ricks's arguments in turn.

23

**A. Factual-sufficiency standard in sexually violent predator appeals.**

Evidence is factually insufficient if, in view of the entire record, the disputed evidence a reasonable jury could not have credited in favor of the behavioral-abnormality finding, along with undisputed facts contrary to this finding, is so significant that the jury could not have made this finding beyond a reasonable doubt. *Stoddard*, 619 S.W.3d at 676, 678.

When we review evidence for factual sufficiency, the jury remains the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* at 674, 676–77. So, "a mere disagreement with the jury as to proper evidentiary weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds." *Id.* at 677. That is, we must "presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." *Id.* at 676.

**B. Arambula's opinions and testimony are factually sufficient.**

As we noted in our legal-sufficiency review, the factual disputes in this case turned on an evaluation of witness credibility. The record contains no genuinely undisputed evidence that is contrary to the jury's behavioral-abnormality finding. We likewise conclude the record lacks disputed evidence that a reasonable jury could not have resolved in favor the finding Ricks challenges: that he suffers from a behavioral abnormality. In so holding, we note Dr. Arambula was the lone expert to

24

testify. Thus, this is not an instance in which there were opposing experts who offered conflicting opinions.

Ricks was the only other witness to offer testimony relevant to the issue of behavioral abnormality. In particular, he represented that his sex offender treatment in prison was successful, so that he now has the tools not to reoffend. Ricks said his prior, pre-incarceration treatment simply had not been rigorous enough.

But the jury was free to disbelieve Ricks based on its assessment of his credibility, and we cannot revisit the jury's credibility determination. *See Stoddard*, 619 S.W.3d at 674, 676–77. The jury was likewise free to credit Arambula's contrary assessment of the recidivism risk posed by Ricks over Ricks's self-assessment. *See In re Commitment of Roy*, No. 01-22-00682-CV, 2023 WL 8041044, at *8–9 (Tex. App.—Houston [1st Dist.] Nov. 21, 2023, no pet.) (it is factfinder's province to weigh conflicting testimony, such as conflicts between testimony of offender and expert about offender's risk of reoffending).

Considering the entire record, the disputed evidence a reasonable jury could not have credited in favor of this jury's behavioral-abnormality finding, along with undisputed facts contrary to this finding, is not so significant that the jury could not have made this finding beyond a reasonable doubt. The evidence is therefore factually sufficient. *See Bohannan*, 388 S.W.3d at 302–03; *see, e.g.*, *Roy*, 2023 WL 8041044, at *7–9 (holding evidence legally and factually sufficient in case, like this

one, in which lone expert to testify opined that offender had behavioral abnormality based on methodology like Arambula's here); *In re Commitment of Harris*, 541 S.W.3d 322, 329 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (expert opinion that offender had behavioral abnormality, which was premised elevated risk of reoffending associated with sexual deviance and antisocial personality disorder, was legally and factually sufficient evidence).

## C. Ricks's counterarguments do not alter our conclusion.

Ricks argues there are three kinds of disputed evidence here that the jury could not have reasonably resolved in favor of its behavioral-abnormality finding. In particular, Ricks argues that a reasonable factfinder could not have credited Arambula's opinion that:

- Ricks's refusal to participate in a clinical interview was manipulative, rather than reflecting concern about a conflict of interest;

- Ricks has not internalized his sex offender treatment goals, given the treater noted positive progress in her treatment notes; and

- Ricks's lack of forthcoming trial testimony reflected lack of rehabilitation, rather than shame or embarrassment about his past.

As we explain, a reasonable jury could resolve these factual disputes in favor of the challenged behavioral-abnormality finding, as this jury did.

1. **The jury could have reasonably credited Dr. Arambula's opinion that Ricks's refusal to submit to a clinical interview was an attempt to manipulate the evaluation process.**

Ricks refused to participate in a clinical interview with Arambula, claiming that Arambula had a conflict of interest because Arambula was retained by the State. Arambula testified that Ricks's refusal was an attempt to manipulate the evaluation process; Arambula noted that Ricks had not refused to participate in sex offender therapy in prison even though his therapist was employed by the State. On appeal, Ricks argues that a rational jury could not have sided with Arambula.

But this dispute turns on an evaluation of the credibility of Ricks and Arambula, which is committed solely to the jury. *See Stoddard*, 619 S.W.3d at 674, 676–77 (jury is sole judge of witness credibility and appellate court errs by "ignoring the jury's right to determine the requisite wight to be given that testimony"). The jury was entitled take Arambula's side in this dispute. *See id.*; *see also* TEX. HEALTH & SAFETY CODE § 841.061(f)(1) (providing that a person's refusal to participate in clinical interview "may be used as evidence against the person at trial").

2. **The jury could have reasonably credited Dr. Arambula's opinion that Ricks had not internalized treatment goals.**

Ricks completed a nine-month sex offender treatment program in prison, and the therapist who saw Ricks in this program recorded that he made good progress in treatment. Ricks argues that Arambula discounted these favorable facts based on a single note, in which the same therapist urged Ricks to "legitimately" engage in

further treatment. Ricks asserts that in doing so, Arambula inferred a concern about the sincerity of Ricks's participation that the therapist did not express. According to Ricks, Arambula's reliance on this note to draw this adverse inference represents an "analytical gap" in his reasoning, such that a rational jury could not credit Arambula's opinion discounting Rick's progress in treatment.

We reject Ricks's argument because the record contradicts Ricks's factual premise—that Arambula discounted Ricks's completion of the treatment program and his progress in treatment based *only* upon an adverse inference drawn from a single therapist note. Instead, Arambula opined that Ricks did not internalize treatment goals based on multiple grounds, including:

- Ricks would have submitted to a clinical interview "if he was internally open and dove into his treatment" but he instead refused to do so;

- near treatment's end, Ricks complained "that registering as a sex offender was some kind of political tool," rather than accepting that registration was a consequence of the offenses he committed;

- Ricks's pretrial deposition answers reflected "denial and minimization of what his therapist had said he was very open about"; and

- in his trial testimony, Ricks described what the program taught in general, without applying these teachings to "his own offense cycle."

Setting aside the merits of any such reasoning (which are not before us on this issue), we disagree with Ricks that Arambula relied solely on an inference drawn from a single therapist note.

Instead, the jury was presented with a decision as to what weight to give Ricks's progress in and completion of therapy in light several pieces of evidence. *See Stoddard*, 619 S.W.3d at 668, 674, 676 (jury decides what weight evidence should be given). And, as the Texas Supreme Court has held, "a mere disagreement with the jury as to proper evidentiary weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds." *Id.* at 677.

**3. The jury could have reasonably credited Dr. Arambula's opinion that Ricks was not forthcoming in his trial testimony and that this reflected a failure to embrace responsibility.**

Arambula opined that Ricks, while on the stand, was reticent to discuss the particulars of his offenses and how treatment had helped him to overcome his past. Arambula further opined that this reflected Ricks's failure to fully take responsibility for his past offenses or internalize treatment goals, and that this was an indicator that Ricks would reoffend.

Ricks argues that Arambula unreasonably failed to take into account a more plausible explanation for his reticence: "shame and embarrassment." Ricks posits that a rational jury could not have credited Arambula's explanation for the reticent nature of his trial testimony over Rick's "common sense explanation."

But whether to credit Ricks's explanation for his reticence in testifying about his offenses and what he has personally learned from treatment turns on an evaluation of his credibility, a matter entrusted to the jury alone. *See Stoddard*, 619

S.W.3d at 668 (factual-sufficiency review in sexually violent predator appeals "may not usurp the jury's role of determining the credibility of witnesses"). The jury saw Ricks testify firsthand, and we cannot reweigh his credibility on appeal. *See id.*

## III.    Rick's Complaint as to the Purported Exclusion of Evidence

Ricks next argues the trial court erred in prohibiting him from questioning Dr. Arambula about the State's de-designation or withdrawal of another expert. But Ricks did not preserve this error, and even if had, he has not shown reversible error.

### A.    Ricks did not preserve error as to the exclusion of the evidence.

The State initially had planned to call a second expert witness, Darrel Turner, Ph.D., to testify, but the State withdrew him from its witness list on the morning of trial. The State then made an oral motion in limine to prevent Ricks from referring to this withdrawal before the jury, and the trial court granted this motion.

Ricks now argues that it was error to prevent him from questioning Arambula about the State's withdrawal of Turner as an expert. But Ricks never approached the bench to challenge the ruling in limine, otherwise attempted to question Arambula about this issue in the presence of the jury, or pursued an admissibility ruling.

It is settled that a trial court's grant of a motion in limine is preliminary in nature, merely requires the parties to obtain permission from the bench before raising the subject issue in front of the jury, and does not preserve error as to the exclusion of evidence. *See In re Commitment of Pansky*, No. 01-20-00110-CV, 2021 WL

627036, at \*2 (Tex. App.—Houston [1st Dist.] Feb. 18, 2021, no pet.) (citing *Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 n.3 (Tex. 2015)). In his appellate brief, Ricks does not provide a citation to the record showing an express or implicit ruling on admissibility by the trial court, and we have not found one in our review of the appellate record. Thus, Ricks did not preserve error. *See Pansky*, 2021 WL 627036, at \*2–3; *see also In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011) (citing TEX. R. APP. P. 33.1 in support of proposition that party must obtain ruling, whether express or implicit, from trial court to preserve complaint for appellate review).

**B.** **Assuming for argument's sake that Ricks did preserve error as to the exclusion of the evidence, the trial court did not reversibly err.**

Even if we address the issue, it does not help Ricks. Before the jury, Arambula testified that one of the items he reviewed was "a prior psychological evaluation by Dr. Turner." But Ricks made no objection when Arambula did so, and Arambula did not testify about the contents or conclusions of Turner's evaluation or give any further testimony about Turner in front of the jury.

Later, outside the jury's presence, Ricks's counsel asked Arambula about the State's de-designation or withdrawal of Turner as a testifying expert. Arambula stated he was neither aware that the State had previously designated Turner as a testifying expert nor that the State had de-designated him on the morning of trial. Arambula also stated that he was not aware why the State de-designated Turner.

31

Given that Arambula said nothing substantive about Turner's prior psychological examination in front of the jury and knew nothing about Turner's designation and de-designation by the State, we hold that the trial court's purported refusal to allow Ricks's counsel to question Arambula about Turner's de-designation before the jury did not probably cause the rendition of an improper verdict and therefore does not constitute reversible error. *See* TEX. R. APP. P. 44.1(a).

## CONCLUSION

We affirm the trial court's judgment.

Jennifer Caughey
Justice

Panel consists of Justices Gunn, Caughey, and Morgan.

Justice Morgan, concurring.